IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **In the Matter of the Search of Black Apple iPhone Cellular Telephone, Model A1332, EMC Number 380A, FCC ID BCG-E2380A, IC Number 579C-E2380A** | Mag. No. _____ |

### AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Detective Scott Brown, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.  I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search a black Apple iPhone cellular telephone, Model A1332, EMC Number 380A, FCC ID BCG-E2380A, IC Number 579C-E2380A (hereinafter the "SUBJECT TELEPHONE), which is currently possessed by the Federal Bureau of Investigation ("FBI"), for certain things particularly described in Attachment A.

### INTRODUCTION

2.  Your affiant is "an investigative or law enforcement officer" of the United States within the meaning of Title 21, United States Code, Section 878; that is, an officer of the United States who is empowered by law to conduct investigations of, and make arrests for, offenses enumerated in Section 878 of Title 21, United States Code.

3. Your affiant has been an officer with the Metropolitan Police Department since 1990. Your affiant is currently assigned as a Detective to the Narcotics and Special Investigations Division, detailed to the Federal Bureau of Investigations (FBI) as a Task Force Officer (TFO) with the Save Streets Task Force. Since joining the police department, your affiant has received training and experience in interviewing and interrogation techniques, arrest procedures, search and seizure, gang, organized crime, drug and money laundering investigations, including the illegal structuring of financial transactions, surveillance techniques, asset forfeiture, unlawful importation, possession with intent to distribute and distribution of controlled substances; engaging in financial transactions to promote, disguise or conceal illegal drug trafficking and the source of the proceeds derived from it, and unlawfully engaging in monetary transactions involving the proceeds of specified unlawful activity, practices commonly referred to collectively as "money laundering;" and conspiracies associated with the foregoing criminal offenses which are prohibited by Title 21, United States Code, Sections 841(a)(1), 843(b), and 846, and Title 18, United States Code, Sections 922(g), 924(c), 1956 and 1957.

4. Your affiant is presently assigned to the Safe Streets Task Force in the Washington Field Office of the Federal Bureau of Investigation in Washington, D.C. This particular task force investigates violent street gangs and crews in the Washington, D.C., metropolitan area in which most members are involved in the distribution of narcotics. In the course of my training and experience, your affiant has become familiar with the methods and techniques associated with the distribution of narcotics, the laundering of drug proceeds, and the organization of drug conspiracies. In the course of conducting these investigations, your affiant has been involved in the use of the following investigative techniques: interviewing informants and cooperating witnesses; conducting physical surveillance; conducting short-term and long-

term undercover operations, including reverse undercover drug operations; consensual monitoring and recording of both telephonic and non-telephonic communications; analyzing telephone pen register and caller identification system data; conducting court-authorized electronic surveillance, including wire interceptions; and preparing and executing search warrants that have led to substantial seizures of narcotics, firearms, and other contraband.

5. Through instruction and participation in investigations, your affiant has become familiar with the manner in which narcotics traffickers conduct their illegal business, and the methods, language, and terms which are used to disguise conversations about their narcotics activities. From experience and training your affiant has learned that narcotics traffickers frequently use cellular telephones to further their illegal activities by, among other things, remaining in constant or ready communication with one another without restricting either party to a particular location at which they might be subject to physical surveillance by law enforcement authorities. Your affiant has also learned that narcotics traffickers rarely refer to cocaine, cocaine base, also known as crack, or other illegal drugs expressly by name. Instead, to conceal the true nature of their illegal activities and to thwart detection by law enforcement, narcotics traffickers routinely refer to drugs, drug quantities, and drug prices by using seemingly innocuous words or phrases. Your affiant also knows that drug traffickers frequently have access to several cellular telephones and that they periodically use newly acquired cellular telephones, all in an effort to avoid detection and to thwart law enforcement efforts.

6. The statements in this Affidavit are based in part on my investigation of this matter and my discussions with other law enforcement agents engaged in investigating federal narcotics offenses. Because this affidavit is being submitted for the limited purpose of securing a

search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that evidence, fruits and instrumentalities of the violations of Title 21, United States Code, Sections 841 are presently located on the cellular telephone.

## PROBABLE CAUSE

7. On September 28, 2011, at approximately 6:55 p.m., at 1012 51st Street NE, Washington, D.C., members of the metropolitan police department conducted a search warrant. When officers entered the house, ROBERT QUICK, TYNESHA BUSH, and their 15 month old daughter were in the living room. Officers searched each floor of the three level residence. Officers found in the basement several cages with both adult and puppy pit bulls. Officers searched the main floor which contained the kitchen, living room, dining room and one bedroom. The dining table contained numerous items evidencing distribution of narcotics including razor blades, digital scales, plastic baggies, baking soda, unused zips, and a 3.5 gram rock of crack cocaine, also known as an "eight-ball". Also on the table was a Taser. Located next to the dining room table was a computer printer. On the printer tray were two plastic baggies each containing crack cocaine, one which weighed approximately 29.5 grams, and one which weighed 3.5 grams. Officers recovered multiple rounds of .40 caliber ammunition from the drawer underneath the printer. On the top floor of the residence officers recovered from the master bedroom two firearms from underneath the mattress: (1) a Smith & Wesson .40 caliber semi automatic handgun loaded with six rounds of ammunition, and (2) a Dan Wesson 357 magnum loaded with five rounds of ammunition. Both firearms were located near the corner of the mattress closest to the baby crib. Also recovered from underneath the mattress was mail matter

that identified QUICK and BUSH as residents of the apartment.  A search of the bedroom closet revealed 3.5 grams of crack inside a jacket pocket, and numerous empty zips inside a shoe. Officers also searched a stairway closet on the first floor level in which they recovered $3,370, a plastic bag containing 30 grams of powder cocaine, and a .45 caliber Ruger firearm.  DEA analysis of the narcotics recovered identified over 36 grams of cocaine base (crack cocaine) and over 27 grams of cocaine H.C.L. (powder cocaine). Incident to QUICK's arrest, two cellular telephones were recovered from his person, the black Motorola Boost Mobile cellular telephone, Model WX430, MSN L67PQJ5J4F, MEID number 268435460404337782 and the black Apple iPhone Model A1332, EMC Number 380A, FCC ID BCG-E2380A, IC Number 579C-E2380A.

8.      On October 20, 2011, a grand jury indicted QUICK and BUSH in <u>United States v. Robert Quick, et al.,</u> Criminal Case number 11-314, pending in front of Judge James Boasberg, with six counts: (1) Unlawful Possession with Intent to Distribute 28 Grams or More of Cocaine Base; (2) Unlawful Possession with Intent to Distribute Cocaine; (3) Possession of a Controlled Substance; (4) Using, Carrying, and Possessing a Firearm During a Drug Trafficking Offense; (5) Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year; and (6) Second Degree Cruelty to Children.

## **CELLULAR TELEPHONES**

9.      Based on my training and experience, I know a cellular telephone is a handheld wireless device used primarily for voice communication through radio signals.  These telephones send signals through networks of transmitter/receivers called "cells," enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually

contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones now offer a broad range of capabilities. These capabilities include, but are not limited to: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and email; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system technology for determining the location of the device.

10. In my training and experience, cellular telephones are an important part of a successful drug operation. Individuals who deal in illegal controlled substances use cellular telephones to communicate with their suppliers, distributors, customers and other individuals involved in drug distribution. It is common for individuals who deal in illegal drugs to maintain within their cellular telephones information relating to their drug business. Such individuals also use their cellular telephones to text or leave voicemails for others in the drug business. Based on my experience and training, I have learned that drug-dealers consider their personal cell phone as an indispensable tool for their illegal business. Almost no regular drug-dealer would be without a cellular telephone.

11. Last, in my experience, many cell-phones have picture-taking devices on them. My law enforcement training and experience indicates that drug-dealers like to take pictures of themselves, their drugs, the money made from selling drugs, guns they have, and the persons with whom they work, that is, with whom they sell drugs. In addition to learning with whom

drug-dealers regularly discussed their business, my experience and that of other narcotics enforcement personnel shows that cell-phones also often yield pictures of the drug-dealers regular suppliers, fellow-sellers, and incriminating photographs of them and their friends engaged in drug-related activities, especially cutting and bagging drugs for street-level retail sale.

12.     Your affiant submits that probable cause exists to believe that evidence of drug related offenses will be found stored on the cellular telephone.  A search of the phone may reveal the phone number assigned to the cellular telephone, the numbers of incoming and outgoing calls, other stored numbers that would permit law enforcement officials to investigate the identity or identities of individuals who owned or used the phone, the identity of individuals who may be associated with QUICK in the drug business, and/or the location(s) where QUICK conducted his drug business.

## ELECTRONIC DEVICES AND STORAGE

13.     As described above and in Attachment A, this application seeks permission to search and seize things that the SUBJECT TELEPHONE, might contain, in whatever form they are stored.  Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time.  Even when a user deletes information from a device, it can sometimes be recovered with forensics tools.

14.     Searching for the evidence described in Attachment A may require a range of data analysis techniques.  In some cases, agents and computer analysts may be able to conduct carefully targeted searches that can locate evidence without requiring a time-consuming manual search through unrelated materials that may be commingled with criminal evidence.  In other

cases, however, such techniques may not yield the evidence described in the warrant. Criminals can mislabel or hide information, encode communications to avoid using key words, attempt to delete information to evade detection, or take other steps designed to frustrate law enforcement searches for information. These steps may require agents and law enforcement or other analysts with appropriate expertise to conduct more extensive searches, such as scanning storage areas unrelated to things described in Attachment A, or perusing all stored information briefly to determine whether it falls within the scope of the warrant. In light of these difficulties, the MPD or its agents intend to use whatever data analysis techniques appear necessary to locate and retrieve the evidence described in Attachment A.

## **CONCLUSION**

15. I submit that this affidavit supports probable cause for a warrant to search the SUBJECT TELEPHONE, for evidence of violations of narcotics offenses in violation of 21 U.S.C. Sections 841 and seize the items described in Attachment A.

Respectfully submitted,

_____

Detective Scott Brown

Subscribed and sworn to before me
on January 12, 2012:

_____
UNITED STATES MAGISTRATE JUDGE
.